### In re MASON.
### Patent Appeal No. 3020.

Court of Customs and Patent Appeals.
Dec. 27, 1932.

Herbert H. Dyke, of New York City, for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office. affirming the rejection of four out of five claims in an application for patent on "Hard Surfaced Composite Insulating Board," filed February 23, 1926.

Claims numbered 8 and 12 are quoted as representative:

"8. Composite fibre.board comprising at least one highly dense surface portion or layer of wood or woody material which had been disintegrated into fibrous state and permanently coalesced together while wet under high heat and pressure and containing at least the principal part of the lignins and cellulose of the original wood or woody material, and an adjacent portion or layer of light porous relatively yielding fibrous heat insulating material cemented to the first named portion."

"12. Composite fibre board comprising a porous layer of fibrous material obtained by disintegration of ligno-cellulose material with retention of at least the principal part of the lignin and by the drying of a wet body thereof under initial pressure only, and a protective layer non-integral therewith and composed of similar material compacted and substantially completely dried under pressure in the presence of moisture and heat to produce a hard, strong, coherent, substantially nonporous sheet of specific gravity approximately one."

The record is not entirely clear as to just what references were relied upon by the tribunals of the Patent Office. First and last, the examiner made reference to three patents to applicant himself (Nos. 1,578,609, 1,663,-504, and 1,663,505), two to Toles and one each to Carey and Lappen. Each of these was listed in the statement of the examiner responding to the appeal to the board; each was listed in the board's opinion, and each appears in full in the record.

Of the examiner's decision the board says: "The Examiner holds that, in view of Toles, there is no invention in uniting the porous and hard finished boards of patents Nos. 1,663,504 and 1,663,505. He also rejects the claims on the Toles patent in view of Mason No. 1,578,609, holding that the product is substantially the same although made of a different material."

The board sustained the rejection, apparently relying, in part, upon Toles patent 1,-369,500, but said in conclusion: "As to the second ground of [the examiner's] rejection we are unable to say whether the products would be substantially the same in the application and in the Toles patent and we prefer to stand on the rejection above discussed."

The opinion of the board made no allusion to Carey beyond merely listing it with the references. The brief of the Solicitor for the Patent Office, however, includes Carey patent, 1,156,753, as a reference and analyzes it, and applies it alternatively with Toles.

As we interpret the claims, they are meant to cover a composite board, or "Hard Surfaced Composite Insulating Material," made up of at least two parts. One of these parts is a lamina of light, porous insulating material, spoken of in argument as a "core"; the other (or others if each side of the "core" is surfaced with one) consists of a dense, or "highly dense" (claim 8, supra), layer. Both are made of ligno-cellulose. They are united by "cementitious" material, "asphaltum, for example."

The claims themselves set forth details and limitations with sufficient clearness to render unnecessary closer analysis, or further description.

The first of appellant's patents referred to by the examiner is No. 1,578,609, issued March 30, 1926, upon an application which was, for a time, copending with the one at bar. It is entitled "Process and Apparatus for Disintegration of Wood and the Like." It seems to have been used by the examiner to show that applicant's material was disclosed therein and is, therefore, old. The board makes no specific reference to this patent, nor is it mentioned in the brief of the Solicitor for the Patent Office.

The application in the instant case in its specifications makes reference to "the inner insulating board portion" (the "core") of the composite board and states that it "may be made * * * in accordance with my copending application serial No. 57,251, filed September.18, 1925. * * *" Serial 57,251 matured into patent No. 1,663,504, one of the references.

The instant application also refers in the specifications to "The hard, dense, grainless surface board material" (the surface "layer" either upper or lower or both), and states that this "may be produced in accordance with my copending application serial No. 57,252, filed September 18, 1925. * * *" Serial No. 57,252 matured into patent No. 1,663,505, another of the references.

It thus appears that appellant has received product patents, issued upon each product separately, for both the boards or material, which, when combined or united by "cementitious" material, comprise the product

for which the patent application involved was filed. The Toles patent 1,369,500 relates to built-up board of fiberized cereal straw made of layers "cementitiously" united with, preferably, "a waterproof cement."

The Board of Appeals took the view that appellant's real and only product inventions resided in the separate boards for which patents had been granted, because, in view of the teaching of Toles, as to "a similar composite board made up of laminæ of porous and hard finished boards of fiberized cereal straw," united "cementitiously," there was no per se invention in appellant's combination of the two similarly united. The board said:

"Where a patent has been granted, the novelty of which depends upon a certain feature, the invention is exhausted so far as that feature is concerned and any further patent must be based upon an inventive improvement thereon or upon a novel and inventive combination of such feature with other elements. If there is no further invention there is no consideration for another patent.

"The fact that a loose practice has grown up of allowing claims in the same application which are not patentably different from each other is no argument for the allowance of such claims in different patents in which the monopoly of the same invention would be extended, Ex parte Edison, C. D. 1915, page 30; Ex parte Creveling, C. D. 1904, page 353.

"In James v. Campbell, C. D. 1882, pages 67, 85, the Supreme Court said: 'It is hardly necessary to remark that the patentee could not include in a subsequent patent any invention embraced or described in a prior one granted to himself any more than he could an invention embraced or described in a prior patent granted to a third person.' "

■ Appellant very earnestly urges that his instant application was copending with the applications upon which the respective patents for the respective separated products were granted; that these are not legal references against the involved applications; that he was entitled, under the practice of the Patent Office, to have the instant claims; that he earnestly sought an issuance of patent upon them simultaneously with the issuance of the other patents; and that he never sought any extension of monopoly. The implication is that if the grant of the involved application should have the effect of double patenting, or be equivalent thereto, that is the fault of the patent office for which he should not be held responsible.

Upon this last point the brief, after having classified the three Mason patents as A, B, and C, says: "Mason never sought any extension of monopoly, but on the contrary, endeavored to obtain issue of this case simultaneously with his companion cases B and C on which it is now rejected, and this application would have been issued with B and C, and none of the questions involved in this appeal would have arisen had not the Examiner erred in forcing applicant to appeal in order to overcome his erroneous rejection on applicant's copending patent A and patents of the prior art, instead of according the allowance that applicant requested and was entitled to have."

This argument renders it proper to say that our concern is primarily with the decision of the Board of Appeals, and, the Patent Office rules having been complied with, if we find that decision to be sound, we have no occasion to look back of it to the decision of the examiner.

In the instant case, however, we do not find that the board overruled the grounds upon which the examiner based his decision. One ground at least was approved, and the other was not expressly overruled, but merely disregarded.

Much of appellant's argument is devoted to the contention that his own patents are not legal references against the instant application. As we have said in the case of In re Thompson, 62 F.(2d) 90, 20 C. C. P. A. ——, recently decided, while the said patents are not technical references in the sense that a timely granted patent to a third person might have been, it is, under the rule announced in the case of In re Isherwood, 46 App. D. C. 507, which we have frequently followed, perfectly proper to look to them for what they claim, and when two applications are presented by an inventor it is proper "to hold the one unpatentable in view of the prior art and the claims upon which the other was patented."

The real test in such cases is whether the application presents claims that are inventive over the claims of the patent granted in a copending application. If not, then appellant had no legal right to an allowance of the application at the time the copending applications were allowed. Conceding, without holding (since we are not here concerned with any possible issue as to the validity of the patent sought had it then been granted), that no harm would have resulted from its allowance, it remains true that, if the only really patent-

able matter was covered by the applications that were granted, appellant has not suffered from the action, nor has he been deprived of any legal right, while to grant same now would result in double patenting, which the law prohibits.

Of course, if appellant were not already fully protected as to the matter which he invented, and if he had matter in his application patentable over his patents or other references, an entirely different situation would confront us.

We find no error in the decision of the Board of Appeals, and same is affirmed.

Affirmed.